UNITED STATES  DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | | |
|---|---|---|
| REBECCA FRANZ, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 07-2081 |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant. | ) | |

# O R D E R

In January 2007, Administrative Law Judge (hereinafter "ALJ") James Gildea denied Plaintiff Rebecca Franz's application for social security supplemental security income benefits. The ALJ based his decision on a finding that Plaintiff's impairments did not prevent her from returning to past relevant work.

In April 2007, Plaintiff filed a Complaint (#5) against Defendant Michael J. Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits.  In October 2007, Plaintiff filed a Motion for Summary Judgment (#15).  In January 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#18).  After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Plaintiff's Motion for Summary Judgment (**#15**).

## I.  Background

### A.  Procedural Background

Plaintiff filed an application for benefits in March 2003, alleging that she became disabled in February 2000.  (R. 61.)  Plaintiff's application for benefits states she is disabled due to coronary artery disease and fibromyalgia.  (R. 79.)  After submitting her application, Plaintiff learned she has diabetes and osteoporosis.  (R. 195, 261.)  Her claim was denied both initially and on reconsideration.  (R. 38-39.)  Plaintiff requested a hearing, which the ALJ held in January 2007.  She was represented by counsel at the hearing.  In January 2007, the ALJ denied

the application and Plaintiff appealed the denial.  In April 2007, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff then filed her complaint in federal court pursuant to 42 U.S.C. § 405(g).

## B.  Plaintiff's Background

Plaintiff was forty-seven years old on her alleged onset date and fifty-four years old at the time of the ALJ's decision.  (R. 18, 277.)  She has completed high school.  (R. 297.)  During the last fifteen years she has worked as a waitress, assembler, and bakery/deli manager, holding each position for six months or less.  (R. 30, 298-99, 201-03, 328.)

## C.  Medical Evidence

The record contains medical evidence from April 2003, Plaintiff's application date, through October 2006.  Plaintiff added additional medical records in 2007, after the ALJ's decision.

In April 2003, Dr. John McKee, a cardiologist, reported that Plaintiff was doing quite well from a coronary artery disease standpoint.  At that visit, she denied experiencing a number of symptoms, including fatigue, blurred vision, chest pain, and back pain.  She did complain of jaw pain and numbness in her fingers when she held her hands up.  (R. 138.)  Dr. McKee diagnosed her as having hypertension.  (R. 139.)

In July 2003, Dr. J. Bradley, a State agency physician, performed a general physical examination of Plaintiff.  At this visit, Plaintiff discussed symptoms of headaches, nausea, and numbness in her hands and feet in hot weather.  She said she had experienced lower back pain for the past ten years.  (R. 142.)  Dr. Bradley noted that Plaintiff could walk fifty feet.  The doctor noted that Plaintiff had a muscle spasm in her back, a normal straight-leg raising test, but some lumbar flexion limitations.  (R. 144.)  She had full range of motion, no observed joint swelling or stiffness, no abnormal neurological findings, no gait or coordination problems, no difficulty walking, and no circulatory problems.  (R. 145.)  From lab studies and X-ray results, the doctor determined her back showed minimal spurring, but was otherwise normal.  The doctor

ultimately concluded that Plaintiff is "moderately limited in her ability to walk, stand, sit, lift, or carry.  She may be suitable for sedentary type work."  (R. 147.)

In August 2003, Dr. Alice Davidson, a nonexamining physician, conducted a physical residual functional capacity (hereinafter "RFC") assessment and concluded Plaintiff could perform medium work.  (R. 141-57.)  This report indicates Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds, she could stand and/or walk six hours in an eight-hour day, and she had no limits in her ability to push and pull.  Dr. Davidson indicated that the record did not establish any postural, manipulative, visual, communicative, or environmental limitations.  (R. 152-54.)  The report concluded, "[t]here were no objective findings that would severely limit standing and walking on a permanent basis."  (R. 156.)  Notes regarding Plaintiff's July 2003 visit with State agency physicians are added in a later RFC supplement, indicating that Dr. Davidson received notes from Dr. Bradley's evaluation after conducting her RFC assessment.  (R. 158.)

Crawford Chiropractic records from November 2004 focus on Plaintiff's back pain.  Four clinical impressions are indicated:  bilateral degenerative joint disease of the hip; pelvic unleveling, low on right; mild right lateral lumbar curve; and facetarthrosis of L5/S1.  (R. 162.)  Dr. Brian Crawford noted muscle spasms and tenderness on multiple occasions.  (R. 164.)  Plaintiff continued to visit Dr. Crawford for these problems on a regular basis throughout 2005 and 2006.  (R. 219-24, 274-82.)

In November 2004, Plaintiff went to Provena Covenant Medical Center complaining she had felt pain on and off in her jaw for two weeks.  She associated this symptom with a heart attack she had in 2000.  She did not complain of chest pain or tightness.  (R. 181.)  Plaintiff did not want to be admitted to the hospital.  (R. 174.)  Doctors prescribed aspirin and nitroglycerin. (R. 177.)  Dr. Kenneth Brown submitted notes pertaining to Plaintiff's other visits to Provena.  In March 2005, Plaintiff denied chest pain, changes in vision, or other symptoms.

In August 2005, Plaintiff was admitted to Provena Covenant Medical Center due to

3

uncontrolled type 2 diabetes mellitus, "insulin requiring." (R. 213.) Her blood sugar was 349. (R. 212.) After this initial diagnosis of diabetes, Plaintiff remained in the hospital for two days until her blood sugar stabilized. In a follow-up consultation with endocrinologist Dr. John Stokes in September 2005, Plaintiff's fasting glucose was 118 and she had started insulin therapy. (R. 216-17.) Doctors encouraged Plaintiff to exercise 150 minutes a week. (R. 216.)

In October 2006, Plaintiff met with Dr. Cynthia Troiano on several occasions. Plaintiff was encouraged to exercise daily and diet. (R. 269.) A bone density report revealed that she had osteoporosis, making her fracture risk moderately high. (R. 264.) In July 2006, Dr. Troiano noted that Plaintiff's blood sugar numbers had recently been under 150. (R. 261.) However, in October 2006, Plaintiff had low blood sugar readings of about 90, which would drop with activity. (R. 287-88.) Dr. Troiano instructed Plaintiff to maintain her current insulin regimen until her scheduled appointment with Dr. Stokes. Dr. Troiano diagnosed NIDDM (indicating poorly-controlled insulin-requiring diabetes), coronary artery disease, hypertension, osteoporosis, hypercholesterolemia, and chronic insomnia. (R. 287-88.)

At this October 2006 visit, Plaintiff also complained of back pain and noted that public aid would no longer pay for her chiropractic treatments. A physical examination revealed that Plaintiff's left leg is shorter than her right, and she had some tenderness in her lower back. Dr. Troiano diagnosed low back pain with lumbosacral instability causing stress and strain on the hip, knees, and thoracic area. Dr. Troiano recommended physical therapy three times a week for two to three weeks and also recommended that Plaintiff learn home exercises. If Plaintiff's condition did not improve after six weeks, Dr. Troiano would consider whether Plaintiff should receive a left heel lift. (R. 286.)

### D. The Hearing Before the ALJ

The ALJ held a hearing in January, during which Plaintiff, Plaintiff's daughter, and Bonnie Gladden, a vocational expert (hereinafter "VE"), testified.

In response to general background questions, Plaintiff testified that she is 5'4" tall and

4

weighs 187 pounds.  (R. 296.)  She is married and she has one adult child, age twenty-one.
Plaintiff, her spouse, and her child rent a single-story home.  (R. 296.)  Plaintiff is insured by
Medicaid and receives food stamps.  (R. 296-97.)  She has a high school education.  (R. 297.)

Plaintiff testified that for most of her life, she has been a waitress at Denny's and other
restaurants, but she could not recall whether that employment was within the past fifteen years.
(R. 329.)  During the past fifteen years, she has worked for six months or less at two grocery
stores, as a bakery/deli manager, and as a cashier.  (R. 301-02.)  Plaintiff's most recent
employment was in 2000, when she worked at ACK Brake Factory as an assembler for a couple
of months.  (R. 298.)  She quit that job after getting injured at work.  (R. 299.)

Plaintiff testified she sees several physicians regularly.  Dr. Brown and Dr. Troiano see
Plaintiff for general conditions and they monitor her heart condition.  Dr. Stokes, an
endocrinologist, treats Plaintiff's diabetes.  (R. 306.)  Dr. Crawford, a chiropractor, has worked
with Plaintiff to reduce her back pain and improve her gait; he has told her one of her legs is
shorter than the other.  (R. 307.)  Plaintiff also goes to Chiddick [sic] Clinic to see eye doctors.
(R. 308-09.)

Plaintiff submitted her list of prescription medications, which consists of the following:
Toprol, Plavix, Lipitor, and Zetia for her heart condition, three forms of insulin for her diabetes,
Diazepam for nerves, Trazodone for sleep, and Lisinopril for hypertension.  Plaintiff takes three
nonprescription medications regularly:  Bayer aspirin for her heart, Prilosec for her stomach, and
calcium supplements for her osteoporosis.  (R. 124.)  Plaintiff testified that her prescription
medications make her exhausted and emotional.  (R. 305-06.)

Regarding her diabetes, Plaintiff testified that she started taking insulin in August 2005,
when she was first diagnosed.  (R. 313-14.)  She takes insulin regularly:  40 milligrams in the
morning, 25 milligrams at dinner, and fast-acting insulin whenever her blood sugar is over 150.
(R. 329.)  Of Plaintiff's three insulin medications, one is a regular injection, one is a fast-acting
insulin pill, and the last is an emergency injection.  (R. 331.)  Plaintiff testified that she monitors

her glucose six times a day.  In the month prior to the hearing, she said her glucose ranged from 62 to 358, and that three to four days a week her glucose readings were over 150.  When she gets readings over 150, she takes the fast-acting insulin pills to reduce her blood sugar.  (R. 330.)

As a result of her fluctuating blood sugar, Plaintiff claimed she becomes emotional and cries.  The instability of her blood sugar also causes trouble with her vision; Plaintiff cannot drive at night due to poor vision.  Her prescription for glasses has changed numerous times since her diabetes diagnosis.  When Plaintiff's blood sugar is high, she can barely see, even with her glasses.  (R. 308-09.)  Additionally, Plaintiff testified she experiences neuropathy, a symptom where blood does not circulate well to her hands and feet.  When this occurs, her hands and feet feel very cold, she experiences numbness, and sometimes she cannot pick things up.  (R. 315.) Plaintiff also testified that blood sugar levels over 150 cause migraines, that she cannot successfully relieve the headaches with medication, and that the headaches may last for three or four days.  (R. 316-17.)

Plaintiff also testified about her heart condition.  She had a heart attack in 2000.  Plaintiff said the artery that goes across the front of her heart was 99 percent blocked, and the artery was opened with a stent.  Plaintiff testified she still experiences some pain in her chest.  At times, Plaintiff experiences symptoms that preceded her heart attack, such as pain in her jaw and upset stomach.  When this happens, she takes nitroglycerin, which she carries in her pocket.  (R. 311.) Plaintiff went to Carle Hospital once in 2006 when she experienced these symptoms.  Plaintiff testified her heart condition is aggravated by stress, too much exercise, lack of sleep, hot humid air, and greasy air.

Plaintiff also testified that back pain limits her mobility.  According to Plaintiff, back pain limits her ability to sit, stand, and walk.  She can sit comfortably in a chair without adjusting her position for fifteen minutes, and she can stand in one position for ten minutes.  (R. 332.)  She testified she will not walk across stores with cement floors, such as Walmart, because walking on cement floors causes her back to give out.  (R. 332.)  Plaintiff testified that on a good day, when her blood sugar is under control, she can walk a quarter of a mile.  (R. 318.)  She

cannot go farther due to back pain.  (R. 318.)

Plaintiff testified about her daily activities.  She wakes up by 7:00 a.m., tests her blood sugar, and eats her breakfast.  She waits two hours, tests her blood, has a snack, waits two hours, and eats lunch.  She continues to check her blood every two hours when the readings are high.  She will spend her time watching TV, and she will read if her vision is good enough.  She tries to play with her dogs and walk every day, but she cannot always do this.  Plaintiff claimed she cannot lift her dogs, even one that weighs less than five pounds.  She does not cook or do chores that involve standing.  She does not do laundry because the washer and dryer are in the basement and she cannot climb the stairs.  She does not vacuum because she cannot push the vacuum back and forth.  (R. 318-19.)  Plaintiff says she usually falls asleep around 1:00 a.m., and often wakes up before 5:00 a.m.

In addition to these activities, Plaintiff takes both traditional and on-line courses at Parkland College.  At the time of the hearing, Plaintiff was enrolled in three hours of class at Parkland campus two days a week.  Some of her courses are college level, and she is taking remedial courses in English and math.  Her daughter enrolls in the same on-campus courses, and they attend class together.  Her daughter reads assignments to Plaintiff when her vision is affected by her blood sugar, and her daughter may type her assignments.  Plaintiff says she has been enrolled at Parkland for four semesters, and most of her grades have been Ds and Fs.  Plaintiff testified that high blood sugar makes it difficult for her to concentrate and remember information, and this affects her grades.

Plaintiff's daughter, Christina Fournier, also testified.  Plaintiff left the room for this portion of the hearing.  Ms. Fournier testified that she takes classes with her mother, explains things to her mother when she does not understand them, and helps her get her school work done on time.  (R. 342.)  Ms. Fournier said she reads the assignment for her mother whenever her blood sugar is high, which is two or three times a week.  (R. 344.)  Ms. Fournier will do various projects, such as house cleaning and lawn work, to supplement the household income, but she believes having a full-time job would keep her away from her mother too much.  Plaintiff's

7

husband is disabled and receives Social Security disability benefits, and Ms. Fournier often cares for him as well.

The VE provided testimony on whether Plaintiff could return to past relevant work despite her limitations.  She testified that Plaintiff's job as waitress has a *Dictionary of Occupational Titles* (hereinafter "DOT") code of 311.477-030; it is considered semiskilled light work.  (R. 336.)  Plaintiff's job as an assembler, DOT code 706.684-022, is unskilled light work. (R. 336.)  Plaintiff's work as manager of a bakery/deli, DOT code 189.117-046, is skilled work, and is classified sedentary work as listed but light work as performed.  (R. 336.)

The ALJ posed a hypothetical question to the VE, asking the VE to disregard any information gathered from listening to Plaintiff's testimony or reading her file.  The ALJ stated:

> I'd like you to assume first, a younger individual with a high school education and the same past relevant work as the claimant.  Has the residual functional capacity to perform at the light exertional level.  That does not involve climbing ladders, ropes or scaffolds or more than occasional climbing of ramps or stairs or more than occasional balancing, stooping, kneeling, crouching, or crawling.

( R. 336.)  The VE responded that this hypothetical person could perform Plaintiff's past work as a waitress and assembler, as well as certain facets of the bakery/deli work.

The ALJ continued:

> For my second hypothetical I'd like to ask the same question only this time assuming that the individual is approaching advanced age and were [sic] limited to sedentary exertional work.  Could such a hypothetical individual perform any of his or her past relevant work either as the claimant testified she performed it or as generally performed in the national economy?

(R. 336-37.)  The VE answered that in this case, the hypothetical individual could not perform Plaintiff's past work as Plaintiff performed it or as it is generally performed in the national economy.  However, the VE clarified that such a person could perform sedentary managerial work.  (R. 337.)  The VE also testified that a sedentary deli manager would have transferable skills of making change and that would transfer to cashier work.  The VE specified that among cashier jobs, DOT code 211.462-014, there are 26,486 semiskilled sedentary jobs that the hypothetical individual could perform.  The VE confirmed that her testimony was consistent with information in the DOT.

Plaintiff's counsel asked the VE a different hypothetical question with more limitations, as follows:

> [A]ssume an individual of the same age, the same education and past relevant work as the claimant, who can stand for 10 minutes at a time, sit for a maximum of 10 to 15 minutes at a time without moving around, having to change positions in the chair, walk for one block and lift less than 10 pounds.  Non-exertionally this person has difficulty concentrating for a consistent eight hours during an eight hour work day.  She may [sic] two or three times a week frequent crying spells and would need to have just minimum contact, if any, with the public.

(R. 339-40.)  The VE responded that such an individual could not perform Plaintiff's past work because of the exertional levels involved.  Limiting cashier work to jobs that are more routine and repetitive to satisfy the hypothetical question would reduce the number of jobs available to 7,000 in the State of Illinois.

### E.  The ALJ's Decision

The Social Security Administration (hereinafter "SSA") defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis.  20 C.F.R. § 416.920(a-f).  At each step, if the determination can be made, the ALJ proceeds to the next step.  20 C.F.R.

§ 416.920(a)(4).  If the claimant is currently employed or was previously employed during the relevant period, he is not disabled.  20 C.F.R. § 416.920(a)(4)(i).  The second question is whether the claimant has a severe impairment that will last at least twelve months.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant does not have a severe impairment, the inquiry ends.  *Id*. However, if the claimant has a severe impairment, the third step is to ask whether the severe impairment meets or equals one listed in Appendix 1 to subpart P of part 404 of Chapter 20. 20 C.F.R. § 416.920(a)(4)(iii).  If it does, the claimant is disabled.  *Id.*  If it does not, the fourth question is whether the claimant is able to perform his past relevant work with his current impairment.  20 C.F.R. § 416.920(a)(4)(iv).  If he can, then he is not disabled.  *Id.*  If he is not able to perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(c)(1).

Here, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since her application date of March 17, 2003.  (R. 28.)  Next, the ALJ determined that Plaintiff has severe impairments of coronary artery disease with a history of myocardial infarction, diabetes mellitus, and osteoporosis.  The ALJ rejected Plaintiff's claim that she has a severe impairment of fibromyalgia.  (R. 29.)  Third, the ALJ determined that Plaintiff's severe impairments did not meet or equal a listed impairment.  (R. 29.)  Plaintiff does not contest these three findings.

The ALJ then considered Plaintiff's RFC.  The ALJ concluded that medical records since Plaintiff's application date did not support a finding of disability considering Plaintiff's impairments either alone or in combination.  To support this conclusion, the ALJ noted that Plaintiff seemed to have recovered well from her heart attack, and had no complaints of chest pains or palpitations at a 2003 doctor's appointment.  Dr. McKee wrote at that time that Plaintiff was "doing quite well from a coronary artery disease standpoint."  (R. 139.)  At various times, Plaintiff's medical records concerning her heart condition note that from April 2003 to August 2005, Plaintiff denied having chest pains, shortness of breath, or any symptoms other than twinges in her jaw.  Dr. Troiano's progress notes show no cardiac symptoms or findings.

10

The ALJ next considered what impact Plaintiff's diabetes had on her RFC.  The ALJ concluded that medical records do not establish a disabling condition.  To support this conclusion, the ALJ noted that Plaintiff has not required any hospital or emergency room visits for her diabetes since August 2005.  The ALJ states, "[h]er diabetes is non-insulin dependent generally, although she has been prescribed insulin at times.  There is also no evidence of residuals, despite some difficulties controlling her blood sugars."  (R. 29.)  The ALJ notes that doctors advised Plaintiff to diet and exercise regularly, and that medical records show no significant end-organ damage or other residuals that would prevent Plaintiff from working.  (R. 30.)

The ALJ next addressed Plaintiff's complaints of joint pain and lower back pain and concluded that Plaintiff's RFC is minimally affected by this impairment.  To support this conclusion, the ALJ noted that the only objective evidence supporting Plaintiff's claim of pain is a bone density scan revealing osteoporosis.  (R. 30.)  The ALJ cites Dr. Bradley's findings; Dr. Bradley noted Plaintiff has good range of motion, a straight-leg test was normal, Plaintiff had no motor, sensory, or reflex loss, and Plaintiff could walk normally without assistance and on heels and toes.  The ALJ also cites Dr. Troiano's report that Plaintiff has full range of motion and some tenderness of the left sacrum, and that Plaintiff should exercise to lose weight.  The ALJ also cited opinions from Dr. Crawford, a chiropractor, but did not give his reports significant weight.  The ALJ also rejected Dr. Bradley's assertion that Plaintiff has moderate limitations in her ability to walk and stand, stating that this finding is not supported by any medical findings regarding the use of her legs.  (R. 31.)

Thus, considering Plaintiff's coronary artery disease, diabetes, and lower back pain, the ALJ concluded that Plaintiff has the RFC to perform a wide range of  light work, with no climbing of ladders, ropes, or scaffolds, occasional climbing of ramps or stairs, and occasional balancing, stooping, kneeling, crouching or crawling.  In making this finding, the ALJ gave limited weight to the conclusions of State agency physicians that Plaintiff could perform medium work.  The ALJ reasoned that limiting Plaintiff to light work gives her some benefit of the doubt regarding her claims that she experiences some pain and side effects from medication.

The ALJ determined that relevant credibility factors do not support a finding of disability.  He based this credibility determination on a lack of medical findings supporting Plaintiff's claims of pain and Plaintiff's activities, especially her enrollment in college courses. Regarding pain, the ALJ noted that Plaintiff receives medication for pain and she had not been hospitalized since August 2005.  The ALJ mentioned Dr. Bradley's observation of muscle spasms in July 2003, but stated that the record contained no other findings of muscle spasms. The ALJ stated there is no record of abnormal weight loss or problems concentrating due to pain. Regarding daily activities, the ALJ referred to Plaintiff's college courses and stated that "the undersigned finds it hard to accept that she would have the stamina to do this, if her impairments are as severe as she claims."  (R. 31.)

Finally, the ALJ relied on the VE's testimony to conclude that Plaintiff could return to past relevant work as waitress or assembler.  The ALJ continued that even if Plaintiff is limited to sedentary work, she would still be capable of performing the cashier job according to the VE. The ALJ stated:  "Further, this finding would be made even though the claimant is closely approaching advanced age since her application date."  (R. 31.)

## II.  Standard of Review

The ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Therefore, the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability.  *Id*.  The Court defers to the ALJ's determination of credibility, "so long as they find some support in the record."  *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

## III.  Discussion

Plaintiff argues that the Court should grant summary judgment in her favor because

12

substantial evidence does not support the ALJ's determination at step four that Plaintiff can return to her past relevant work.  According to the ALJ, Plaintiff's past relevant work includes several positions categorized as light work, and one position as a bakery/deli manager that is listed in the DOT as skilled sedentary work.  Specifically, Plaintiff contends that (1) the ALJ's determination that Plaintiff can perform light work is not supported by substantial evidence; and (2) the ALJ's finding that Plaintiff could return to her past work as a skilled sedentary bakery/deli manager is erroneous as a matter of law.

### A.  Plaintiff's Ability To Perform Past Relevant Light Work

The ALJ found that Plaintiff was limited to light work, but that this limitation did not preclude her from performing her past relevant work as waitress or assembler, because these positions require only light work according to the DOT.  (R. 32.)

> According to the Code of Federal Regulations, light work involves:
>
> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).  Furthermore, a job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Haynes v. Barnhart*, 416 F.3d 621, 627 n.1 (7th Cir. 2005) (quoting SSR 83-10, 1983 WL 31251, at *5).

Here, Plaintiff has three medical conditions that she claims make her unable to perform light work:  coronary artery disease, diabetes, and back pain.  Plaintiff contends that the ALJ erred in assessing those conditions.  In addition, Plaintiff contends that the ALJ improperly discounted her credibility.

### 1.  Coronary Artery Disease

First, regarding Plaintiff's coronary artery disease, the ALJ relied on several doctor

reports in concluding this medical condition did not render Plaintiff disabled.  The ALJ noted that in 2003, Dr. McKee reported that Plaintiff was doing quite well from a coronary artery disease standpoint, and that Plaintiff did not report chest pain or palpations.  In 2005, Dr. Brown reported that Plaintiff's cardiac examination was normal, and Plaintiff denied chest pain and shortness of breath.  Recent progress notes from Dr. Troiano showed no cardiac symptoms or findings.  These facts are all supported by the record.  A reasonable mind could accept these facts as adequate to demonstrate that Plaintiff's coronary artery disease does not establish a disabling condition.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's coronary artery disease did not significantly limit her RFC.

### 2. Diabetes

Plaintiff also contends that diabetes renders her unable to perform light work.  In discussing Plaintiff's diabetes, the ALJ wrote, "[Plaintiff's] diabetes is non-insulin dependent generally, although some insulin has been prescribed at times."  (R. 29.)  This statement constitutes a factual error, because medical records and Plaintiff's testimony repeatedly indicate that Plaintiff relies on insulin daily.  When factual error in the form of serious mistakes or omissions makes the decision unreliable, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

Here, the ALJ failed to discuss evidence, other than this factual error, that supports the conclusion that Plaintiff's diabetes does not affect her RFC.  Although the ALJ pointed out that Plaintiff has not been hospitalized since August 2005, she exhibits no signs of end-organ damage, and doctors recommend that Plaintiff exercise two and a half hours each week, there is no logical connection between these facts and the ALJ's conclusion that Plaintiff can perform light work on a full time basis.  Additionally, the ALJ does not address evidence that Plaintiff's blood sugar is unstable and that as a result she experiences fatigue, numbness in extremities, difficulty walking, difficulty controlling emotions, blurred vision, and other symptoms.  Based on this evidence, a reasonable trier of fact could conclude that Plaintiff's diabetes renders her incapable of performing light work.  Accordingly, the Court remands this case so that the Social Security Administration may reconsider Plaintiff's RFC in light of her diabetes.

### 3.  Back Pain

Third, Plaintiff alleges she is disabled based on her back pain because it limits her ability to walk, stand, or sit.  Plaintiff specifically contends that the ALJ provided inadequate reasoning for disregarding Dr. Bradley's conclusions regarding limitations.  The ALJ also erred by granting more weight to nonexamining State agency physicians than to Dr. Bradley without articulating his reasoning, failing to consider the evaluation of Dr. Troiano, and giving no weight to Dr. Crawford's notes and opinions.  Due to these errors, the ALJ's decision fails to adequately explain his reasoning for his conclusion that Plaintiff can perform light work despite her back pain.

In finding that Plaintiff can perform light work despite her back pain, the ALJ stated, "[t]he only objective evidence supporting [Plaintiff's allegations of pain and limitations due to back pain] is a bone density scan ordered by Dr. Troiano in 2006, which showed moderate problems with osteoporosis."  (R. 30.)  In support of this statement, the ALJ relied on some portions of Dr. Bradley's assessment, but the ALJ ignored Dr. Bradley's ultimate conclusion that Plaintiff has difficulty walking.  Also, the ALJ relied on the conclusions of nonexamining State agency physicians.  Additionally, the ALJ ignored Dr. Troiano's opinion that Plaintiff suffers from "low back pain with lumbrosacral instability causing strain and stress on her hips, knees,

and thoracic area" (R. 286), a diagnosis likely related to Dr. Troiano's observation that Plaintiff's legs are different lengths.  (R. 285.)  Last, the ALJ rejected Dr. Crawford's notes and reports, stating that they are not given significant weight because he is a chiropractor and not a licensed physician.  (R. 30.)

A treating doctor's opinion regarding the nature and severity of a medical impairment is entitled to controlling weight if supported by the medical findings and consistent with the substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  An ALJ may discount a medical opinion that is internally inconsistent as long as he "minimally articulate[s] his reasons for . . . rejecting evidence of a disability."  *Groskreutz v. Barnhart*, 108 F. App'x 412, 418 (7th Cir. 2004) (quoting *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000)).  Regarding other medical opinions, the SSA will evaluate every medical opinion it receives, and it will generally give more weight to the opinion of a doctor who has examined a claimant than to a source who has not examined a claimant.  20 C.F.R. § 404.1527.  An ALJ may not select and discuss only that evidence that favors his ultimate conclusion.  *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

First, Plaintiff argues that the ALJ wrongly rejected Dr. Bradley's conclusions that Plaintiff is "moderately limited in her ability to walk, stand, sit, lift, or carry" and that she "may be suitable for sedentary type work."  (R. 147.)  Dr. Bradley examined Plaintiff at the request of the State agency.  The ALJ rejected Dr. Bradley's conclusion, stating:  "Dr. Bradley's assertion in 2003 that claimant had moderate limitations in her ability to walk and stand is not supported by any medical findings regarding use of her legs."  (R. 31.)  This is the only reason provided.  This is not an acceptable reasoning.  Because Plaintiff has never claimed to have any problem with the use of her legs, the ALJ's explanation is inadequate.  In fact, Plaintiff testifies that her difficulty with walking and standing arises from her diabetes and her back pain.  An ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable

to disability.  *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984).  In the absence of a reasonable explanation for rejecting the conclusion of Dr. Bradley, it seems that the ALJ has merely selected evidence that favors his conclusion.

Second, instead of relying on Dr. Bradley's conclusion, the ALJ based his decision that Plaintiff can perform light work on the conclusions of nonexamining State agency physicians, referring to Dr. Davidson's physical RFC assessment.  However, regulations indicate that opinions from an examining physician, such as Dr. Bradley, should generally be given more weight than opinions from nonexamining physicians.  20 C.F.R. § 404.1527(d).  Therefore, the ALJ should not rely on nonexamining State agency physicians, who determined Plaintiff can perform medium work, over Dr. Bradley, who determined Plaintiff may be suitable for sedentary work,  without providing an explanation.  Furthermore, the Court questions the reliability of Dr. Davidson's assessment, as it appears Dr. Davidson did not receive notes from Dr. Bradley's consultative examination until after completing her report.  (R. 158.)

Third, the ALJ did not acknowledge Dr. Troiano's assessment of Plaintiff's back pain. Dr. Troiano, a treating physician, saw Plaintiff in October 2006, at which time Plaintiff's chief complaint was back pain.  Dr. Troiano noted that Plaintiff appeared to have a short left leg which could be contributing to her back pain.  Dr. Troiano thought this could be a functional problem as opposed to an anatomical problem.  She ultimately assessed low back pain with lumbrosacral instability causing stress and strain on the hip, knees, and thoracic area.  Dr. Troiano recommended physical therapy three times a week for two to three weeks and that Plaintiff learn home exercises.  If there was no improvement, Dr. Troiano would consider a heel lift. Dr. Troiano prescribed Valium to help Plaintiff sleep and to relax her muscles.  (R. 286.) Dr. Troiano is a treating physician and her opinion is not inconsistent with substantial evidence in the record.  Thus, this evidence receives controlling weight, and it establishes the nature of Plaintiff's condition.

Fourth, the ALJ gave no weight to evidence presented by Dr. Crawford, Plaintiff's chiropractor. The Commissioner's regulations do not list chiropractors as medical sources who can provide evidence to establish an impairment, but a chiropractor is an acceptable source to provide evidence to show severity of an impairment and how it affects one's ability to work. 20 C.F.R. § 404.1513(a, d). Here, the ALJ did not properly consider Dr. Crawford's reports. First, in discussing Plaintiff's credibility regarding her level of back pain, the ALJ stated, "[t]here was a notation of muscle spasms made by Dr. Bradley in July 2003, but there have been no other findings of muscle spasms." (R.30.) However, Dr. Crawford's records note muscle spasms on multiple other occasions. Because the ALJ found evidence of muscle spasms significant, he should have considered Dr. Crawford's notes on this point. Second, the ALJ stated he did not give the chiropractor's notes "significant weight." (R. 30.) However, Plaintiff consulted with chiropractors regularly for over two years, and the record contains substantial, detailed, consistent notes of tenderness, palpations, and muscle spasms. This is inconsistent with the ALJ's statement that the record contains no objective evidence of Plaintiff's back pain other than a bone density scan. The ALJ does not have to give substantial weight to reports from the chiropractor, but he is not free to ignore these reports all together, especially in these circumstances where a treating physician and an examining State agency physician have independently established an impairment and Plaintiff offers these records to substantiate the severity of the impairment.

For these reasons, on remand, the ALJ should reconsider Plaintiff's RFC in light of evidence of her back pain and resulting limitations noted in the medical evidence.

### 4.  Credibility

Plaintiff next argues that the ALJ improperly discredited her testimony, and that Plaintiff's RFC should be altered in light of that testimony. The ALJ's discussion on credibility focused on Plaintiff's back pain and concluded that although Plaintiff does experience pain, the degree of her pain does not establish complete disability.

This Court gives considerable deference to an ALJ's credibility finding and will not

overturn it unless a plaintiff can show that those findings were patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992). However, when credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

In reaching his credibility determination, the ALJ relied on some objective considerations, including the fact that Plaintiff treats her back pain with medication and chiropractic care. The ALJ commented that there is no evidence of abnormal weight loss or problems concentrating due to pain. The ALJ also reviewed Plaintiff's enrollment in college courses, stating he "finds it hard to accept that [Plaintiff] would have the stamina" (R. 31) to take these courses, even with extensive help from her daughter, if her impairments are as severe as she claims. Additionally, the ALJ's discussion of credibility indicates that he considered evidence supporting Plaintiff's credibility, including her limited daily activities, her reliance on her daughter for her physical needs, and her frequent chiropractic care. An ALJ's credibility assessment will stand "as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007)). Based on this standard, the Court cannot conclude that the ALJ's credibility determination was patently wrong as it relates to Plaintiff's back pain.

However, the Court notes that the credibility assessment only addressed Plaintiff's back pain; the ALJ did not address Plaintiff's credibility as it relates to her diabetes and resulting limitations. On remand, the ALJ should assess the credibility of Plaintiff's statements pertaining to the frequency and the consequences of her high blood sugar, namely her difficulties with headaches, controlling emotions, blurred vision, etc.

**B.  Plaintiff's Past Work As Bakery/Deli Manager**

The ALJ alternatively held that even if Plaintiff is unable to perform light work, she can perform past relevant work that is sedentary.  Plaintiff briefly held a position as bakery/deli manager that was light work as she performed it, but that is listed as sedentary in the DOT. Plaintiff contends that the ALJ erred by concluding that Plaintiff could perform her past job as a bakery/deli manager because Plaintiff did not hold the bakery/deli manager position long enough for it to be considered past relevant work.  The Regulations indicate that the SSA can consider a job to be past relevant work only if it occurred within the past fifteen years and lasted long enough for the claimant to learn to do the job.  20 C.F.R. § 416.965(a).  According to the DOT, the bakery/deli manager position takes at least four years to learn, and Plaintiff held that position for only six months.  The Commissioner concedes that the ALJ should not have included the job of skilled bakery/deli manager as part of Plaintiff's past relevant work.

The ALJ also stated that Plaintiff possesses transferable skills from the bakery/deli manager position that would enable her to work as a sedentary cashier.  Plaintiff quotes the Commissioner's regulations, defining transferability as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs."  SSR 82-41(2)(b)(1979); *see also* 20 C.F.R. § 416.968(d).  Moreover, regardless of whether Plaintiff could possess transferable skills from a position that is not considered past relevant work, the issue of transferable skills only pertains to the step five determination of whether there is work in the national economy that Plaintiff can perform.  The ALJ did not reach this stage in the analysis because he based his decision on a determination at step four that Plaintiff could return to past relevant work.

### IV.  Summary

For the reasons set forth above, this Court **GRANTS** Plaintiff's Motion for Summary Judgment (**#15**).  Furthermore, the Court orders that the decision be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g),[1] for further consideration consistent with this order.

ENTER this 21st day of July, 2008.


_____ s/ DAVID G. BERNTHAL _____
U.S. MAGISTRATE JUDGE

---

[1]Under 42 U.S.C. § 405(g), sentence four, "[t]he court shall have the power to enter, upon pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing."